**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Arnold Fleck, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:15-CV-13 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| Joe Wetch, President of the State Bar | ) | **CROSS-MOTION FOR SUMMARY** |
| Association of North Dakota;  Aubrey | ) | **JUDGMENT; ORDER DENYING** |
| Fiebelkorn-Zuger, Secretary and Treasurer | ) | **PLAINTIFFS MOTION FOR** |
| of the State Bar Association of North | ) | **SUMMARY JUDGMENT** |
| Dakota; Tony Weiler, Executive Director | ) | |
| of the State Bar Association of North Dakota) | | |
| and Penny Miller, Secretary-Treasurer of | ) | |
| the State Board of Law Examiners, in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, Arnold Fleck, is an attorney and member of the integrated State Bar Association of North Dakota ("SBAND").  The Defendants are Joe Wetch, President of the State Bar Association of North Dakota; Aubrey Fiebelkorn-Zuger, Secretary and Treasurer of the State Bar Association of North Dakota; and Tony Weiler, Executive Director of the State Bar Association of North Dakota ("SBAND Defendants").  All parties agree there are no genuine issues of material fact in dispute.  The parties request the Court, through their pending cross-motions for summary judgment, rule upon the following issues as a matter of law:

(1) Whether the Plaintiff may constitutionally be required to be a member of, and pay dues to, SBAND in order to practice law in North Dakota; and

(2) Whether SBAND's procedures, which permit the Plaintiff to "opt-out" of funding activities which are not germane to the compelling interests of regulating attorneys and improving

the quality of legal services available to the citizens of North Dakota, provide the Plaintiff with minimum constitutionally required safeguards.

## I.    BACKGROUND

SBAND is a professional association of members of the legal profession licensed to practice law in the State of North Dakota and attorneys who, by virtue of holding judicial or other office, are exempt from such licensing.  N.D.C.C. § 27-12-02.  SBAND was created by statute, and is governed by a Board of Governors elected from its membership.  SBAND is an integrated bar association meaning membership and payment of dues are mandatory in order to practice law in the State of North Dakota.  The objectives of SBAND are to improve professional competence, promote the administration of justice, uphold the honor of the profession of law, and encourage cordial relations among members of the State Bar.  See Docket No. 26-1.

SBAND sets annual bar dues for its members.  By statute, $75 of each annual license is paid to SBAND to fund the lawyer discipline system, with 80% of the remainder of each annual license being paid to SBAND "for the purpose of administering and operating the association." N.D.C.C. § 27-12-04.  In part, SBAND investigates complaints against attorneys and facilitates attorney discipline, promotes law-related education and ethics, facilitates and administers a volunteer lawyers program and lawyer assistance program, administers a client protection fund, provides advisory services to government officials on various legal subjects, monitors and keeps members of the bar updated on the status of various legislative measures, and provides information to the legislature on matters affecting regulation of the legal profession and matters affecting the quality of legal services available to the people of the State of North Dakota.  See Docket No. 50, p. 2.

SBAND also engages in certain "non-chargeable" activities, that is, all activities other than those related to its compelling government interest in improving the practice of law through the regulation of attorneys.  <u>Keller v. State Bar of California</u>, 496 U.S. 1, 14 (1990); <u>Chicago Teachers Union, Local No. 1 v. Hudson</u>, 475 U.S. 292, 310 (1986); <u>See</u> Docket No. 42-2.  Some portion of the dues are spent on political or ideological activities, and SBAND is constitutionally compelled to reimburse that spending to bar members who so request.  SBAND conducts a variety of activities that include lobbying on bills pending before the Legislative Assembly of North Dakota.  <u>See</u> Docket No. 25, pp. 3-4.

In this case, SBAND expended member dues on certain challenged "non-chargeable" activities, namely opposing North Dakota Initiated Statutory Measure No. 6 ("Measure 6").  <u>See</u> Docket No. 42-2, p. 3.  Fleck strongly supported Measure 6, which appeared on the North Dakota ballot on November 4, 2014.  Measure 6 proposed to "amend section 14-09-06.2 of the North Dakota Century Code to create a presumption that each parent is a fit parent and entitled to be awarded equal parental rights and responsibilities by a court unless there is clear and convincing evidence to the contrary."  Fleck contributed $1,000 to a committee in support of Measure 6, and he also he participated in the campaign—appearing on television and radio to debate the merits of the measure.  <u>See</u> Docket No. 4-1, p. 2.

The record reveals that a few weeks before the election Fleck discovered—through a third party—that SBAND staunchly opposed Measure 6 and threw its weight behind the opposition, expending member dues in the process.  <u>See</u> Docket No. 4-1, p. 3.  SBAND contributed $50,000 in compelled member dues to "Keeping Kids First," a committee that opposed Measure 6.  <u>See</u> Docket Nos. 4-2 and 42-2.  Ultimately, the "Keeping Kids First" committee returned some of these funds, and SBAND's final contribution totaled $46,525.85.  <u>See</u> Docket No. 20, p. 8.  In addition,

SBAND provided "Keeping Kids First" with support by allowing the ballot committee to utilize SBAND's email system and establish an email address with SBAND's domain name: keepingkidsfirst@sband.org.  See Docket No. 1, p. 9; Docket No. 20, p. 9.

On February 3, 2015, Arnold Fleck filed a complaint in federal court for declaratory and injunctive relief, alleging three claims for relief against the Defendants: (1) lack of minimum safeguards required under Keller v. State Bar of California, 496 U.S. 1 (1990); (2) violation of the right to affirmatively consent to "non-chargeable" expenditures; and (3) the unconstitutionality of a mandatory bar association.  See Docket No. 1.  On February 3, 2015, Fleck filed a "Motion for Preliminary Injunction" with respect to his first and second claims for relief.  See Docket No. 3. On May 14, 2015, the Court ordered the parties into an early settlement conference under the supervision of Magistrate Judge Charles Miller.  On May 27, 2015, the parties became involved in settlement discussions as ordered and agreed to negotiate a resolution of the case.  All deadlines in the case were then stayed.

Pursuant to a "Joint Stipulation of Partial Case Resolution and Briefing Schedule Regarding Dispositive Motions," dated and filed November 20, 2015 (Docket No. 42), the parties agreed SBAND would adopt revised policies (Docket Nos. 42-1 through 42-3); that such adoption would fully and completely resolve the Plaintiff's first claim for relief described above; that the Plaintiff would withdraw his "Motion for Preliminary Injunction," and the parties agreed to settle all of the Plaintiff's claims for the recovery of past, present, and future attorney fees and costs in this case.  A briefing schedule was agreed upon relative to the pending cross-motions for summary judgment as to the Plaintiff's second and third claims.  Thereafter, this Court adopted the Joint Stipulation and dismissed the Plaintiff's first claim for relief pursuant to the "Order of Dismissal

of Claim One; Order Finding as Moot Motion for Preliminary Injunction" filed on November 24, 2015, (Docket No. 46).

SBAND's new procedures[1] now provide members with the ability to "opt-out" of payment of their pro-rata share of "non-chargeable" expenditures estimated for the upcoming fiscal year, and based on the prior years audited financial statements. Fleck concedes SBAND's newly adopted procedures are in compliance with the minimum safeguards established under Keller and Hudson, and that such new procedures resolve the first claim for relief in this case. With respect to the remaining two counts, Fleck asserts Supreme Court precedent is no longer viable and should be overturned as such precedence is allegedly irreconcilable with the United States Supreme Court's subsequent decision in Knox v. Serv. Emps. Int'l Union, 132 S. Ct. 2277 (2012). Specifically, Fleck asserts the "opt-out" procedure is not adequate to protect his First Amendment rights, and instead asserts that bar members must be allowed to "opt-in" in order to fund "non-chargeable" expenditures.

## II.    STANDARD OF REVIEW

It is well-established in the Eighth Circuit that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); See Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477

---

[1] SBAND Board of Governors adopted the revised policies on September 18, 2015. (Second Weiler Aff. At ¶ 5 and Exhibit Y.) The new "Keller Policy" is posted on the SBAND website.

U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party first has the burden of demonstrating an absence of genuine issues of material fact.  Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005).  The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

In the present case, the record reveals that all parties agree there are no genuine issues of material fact in dispute, and the remaining legal claims are issues for this Court to resolve.


## III.    LEGAL DISCUSSION

### A.    CONSTITUTIONALITY OF NORTH DAKOTA'S INTEGRATED BAR AND COMPULSORY DUES

The Plaintiff, Arnold Fleck, concedes his "claim challenging the constitutionality of conditioning the practice of law upon SBAND membership and payment of SBAND dues is presently foreclosed by" the United States Supreme Court decisions in Keller v. State Bar of California, 496 U.S. 1, 14 (1990) and Lathrop v. Donohue, 367 U.S. 820 (1961). The Supreme Court in Lathrop upheld Wisconsin's integrated state bar on the basis that (1) the only "compelled association" was the payment of dues, which was insufficient on its own to comprise a constitutional violation, and (2) the purpose of integrating the bar was to "promote high standards of practice and the economical and speedy enforcement of legal rights."  367 U.S. at 827-28.  The Supreme Court in Keller reaffirmed this point decades later.  Keller clearly clarified that "lawyers

6

admitted to practice in the State may be required to join and pay dues to the State Bar."  496 U.S. at 4. There is no question under Keller and Lathrop that integrated bar associations are justified by a state's interest "in regulating the legal profession and improving the quality of legal services." 496 U.S. at 13.  Thus, the State of North Dakota may constitutionally condition the right of its attorneys to practice law upon the payment of membership dues to an integrated bar.

Although Fleck has conceded his third claim for relief is foreclosed by Supreme Court precedent, he asserts this long-standing precedent should be overturned by the Supreme Court on a future appeal on the basis that Keller and Lathrop are irreconcilable with basic First Amendment principles and subsequent decisions and, in particular, the United States Supreme Court decision in Knox v. Serv. Emps. Int'l Union, 132 S. Ct. 2277 (2012).  As Fleck has conceded his legal arguments are contrary to United States Supreme Court precedent directly on point, the Court will grant summary judgment in favor of the Defendants on the third claim for relief.

## B.    SBAND'S OPT-OUT PROCEDURE IS CONSTITUTIONAL

For the same reason Fleck's challenge to the constitutionality of SBAND's integrated bar is foreclosed by United States Supreme Court precedent, the challenge to SBAND's "opt-out" procedure is also foreclosed by similar precedent.  The United States Supreme Court specifically stated in the context of an integrated bar in Keller that the "opt-out" procedures established under Chicago Teachers Union, Local No. 1, v. Hudson, 475 U.S. 272 (1986) satisfied constitutional requirements.  See Keller, 496 U.S. at 16 ("We believe an integrated bar could certainly meet its Abood obligation[2] by adopting the sort of procedures described in Hudson." (Footnote added)).

---

[2] In Abood v. Detroit Bd. of Education, 431 U.S. 209 (1977) the United States Supreme Court concluded although the Constitution of the United States of America did not prohibit a union from spending funds for the expression of political views, or toward the advancement of other ideological causes not germane to its duties as collective bargaining representatives, the

As a result of this lawsuit, SBAND has now established a new procedure called the "Keller Policy" by which members choose whether to allow their bar dues to be used for "non-chargeable" activities, i.e., political or ideological activities.  See Docket No. 42-3.  The new procedures employed by SBAND are based on the policies and procedures for labor unions that the Supreme Court approved in Hudson.  In Hudson, the Supreme Court required a labor union's agency fees to include "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending.  Id. at 310.

SBAND provides its members with annual notice of the fee, a description of how it is calculated, and the ability to receive a deduction for the portion of the dues used for "non-chargeable" purposes.  A neutral mediator (Karen Klein or her designee) hears timely challenges to that amount.  The new procedures are as follows:

SBAND KELLER POLICY

1. The State Bar Association of North Dakota ("SBAND") may engage in and fund any activity that is reasonably intended for the purposes of the association which are set forth in Article 2 of the Constitution of SBAND, permitted by the by-laws of SBAND, or as otherwise statutorily authorized.  SBAND may not use the compulsory dues of any member who objects pursuant to paragraph 3 of this policy for activities that are not germane under Keller v. State Bar of California, 496 U.S. 1 (1990).

   Expenditures that are not germane under Keller v. State Bar of California, 496 U.S. 1 (1990) may be funded only with user fees or other sources of revenue, or those portions of member compulsory dues for which no objection has been made pursuant to paragraph 3 unless any such objection has been determined against the objecting member by a neutral mediator.

2. Prior to the beginning of each fiscal year, SBAND shall publish written notice of the activities that can be supported by compulsory dues ("Chargeable") and the activities that cannot be supported by compulsory dues ("nonchargeable").  The

---

Constitution did require that such expenditures be financed from charges, dues, or assessments paid by employees who did not object to advancing those ideas and who were not coerced into doing so against their will by the threat of loss of governmental employment.  Id. at 234-36.

notice shall estimate the cost of each activity, including all appropriate indirect expense, and the amount of dues to be devoted to each activity. The notice shall set forth each member's pro rata portion, according to class of membership, of the dues to be devoted to activities that cannot be supported by compulsory dues without such member's consent. The notice shall be sent to every member of SBAND together with the annual dues statement. A member of SBAND may deduct the pro rata portion of dues budgeted for activities that cannot be supported by compulsory dues without such member's consent.

3. SBAND shall provide periodic notice to its membership of any expenditures that deviate from tis pre-collection notice. SBAND shall also provide notice of any position it adopts regarding legislative proposals and initiated and referred measures within two weeks of SBAND's vote to adopt such positions. After being emailed to members of SBAND, such notices will be readily accessible at www.sband.org.

4. A member of SBAND who contends SBAND incorrectly set the amount of dues which can be withheld must deliver to SBAND a written objection. Any such demand shall be delivered to the Executive Director of SBAND within 30 days of receipt of the member's dues statement or any additional notice, and if not so submitted any such claim shall be considered time barred. SBAND's Board of Governors will address each objection, and if the member is not satisfied with the Board's decision, the member may demand binding dispute resolution which shall be conducted by Mediator Karen Klein, or someone she so designates. The objecting SBAND member may object to mediator Klein or her designee in which case the parties shall mutually agree upon a mediator.

5. If one or more timely demands for binding dispute resolution are delivered, the stat bar shall promptly submit the matter to binding dispute resolution before Mediator Karen Klein or someone she so designates. The objecting SBAND member may object to mediator Klein or her designee in which case the parties shall mutually agree upon a mediator. All such demands for binding dispute resolution shall be consolidated for binding dispute resolution. No later than 7 calendar days before binding dispute resolution, any member, having given written objection pursuant to paragraph 4 and requesting binding dispute resolution, may file with the mediator a statement specifying with reasonable particularity each activity he or she believes should not be supported by compulsory dues under this paragraph and the reasons for the objection. SBAND will have the burden to show that the disputed activities are germane under Keller v. State Bar of California, 496 U.S. 1(1990). The costs of the binding dispute resolution shall be paid by SBAND.

6. In the event the decision of the mediator results in an increased pro rata deduction of dues for members who have delivered timely demands for binding mediation for a fiscal year, the state bar shall provide such increased pro rata deduction to all members who did not consent to funding nonchargeable activities, as well as

members first admitted to the state bar during that fiscal year and after the date of
the mediator's decision.

<u>See</u> Docket No. 42-3

The United States Supreme Court has validated this prior-year calculation process
in the union dues context. <u>See</u> <u>Hudson</u>, 475 U.S. at 307, n. 18.  The Court concludes that
the new "Keller Policy" provides procedural safeguards which comport with long-
established precedent.  Further, the Supreme Court specifically stated in the context of an
integrated bar in <u>Keller</u> that the "opt-out" procedures established under <u>Hudson</u> satisfied
constitutional requirements.  <u>See</u> <u>Keller</u>, 496 U.S. at 16.

The Plaintiff's reliance on <u>Knox v. Serv. Emps. Int'l Union</u>, 132 S. Ct. 2277 (2012)
for the proposition that the "opt-out" procedures are unconstitutional, and that <u>Keller</u> and
<u>Hudson</u> should be overturned, is misplaced.  The Supreme Court in <u>Knox</u> was careful to
distinguish the "opt-out" procedures accepted in <u>Hudson,</u> in the context of annual dues
assessments, from procedures which are required in the context of mid-year special
assessments and dues increases.  The special assessment at issue in <u>Knox</u> was significantly
different in nature from typical union annual dues assessments.  Specifically, the temporary
mid-year special assessment in <u>Knox</u> was to be utilized 100% to fund a "Political Fight-
Back Fund," to achieve the union's political objectives in upcoming elections.  In this
context, the Supreme Court determined the union should have sent out a new <u>Hudson</u> notice
regarding the special assessment (in addition to the annual dues <u>Hudson</u> notice), noting it
made no sense to apply the same chargeable versus non-chargeable expense allocations
utilized for the annual dues assessment to the special assessment.

In essence, Fleck is requesting that long-standing precedent upholding the validity
of "opt-out" procedures as established by the Supreme Court in <u>Hudson</u> (1986), and

10

directly applied to integrated bars in <u>Keller</u> (1990), be overruled.  This Court is unwilling to do that.

In <u>Knox</u>, the Supreme Court did not determine the "opt-out" procedure to be unconstitutional in relation to annual dues assessments.  State bar associations across the country have modified their licensing procedures since <u>Keller</u> was decided in 1990, to come into compliance with the <u>Hudson/Keller</u> requirements, including the "opt-out" procedure at issue in this lawsuit.  Similarly, public unions across the nation have modified their procedures related to compulsory dues to come into compliance with the "opt-out" procedures of <u>Hudson</u>.  <u>See</u> <u>Abood v. Detroit Board of Education</u>, 431 U.S. 209, 222 (1977) (upholding the constitutional validity of compelling employees to support collective bargaining representative and rejecting the notion the only funds from non-union members that a union constitutionally could use for political or ideological causes were those funds that the non-union member affirmatively consented to pay.); <u>Mitchell v. Los Angeles Unified School District</u>, 963 F.2d 258, 260-63 (9th Cir. 1992) (discussing a long line of Supreme Court cases supporting the utilization of "opt-out" procedures, citing <u>Abood</u> in rejecting a claim that an "opt-in" procedure is constitutionally required, and holding that "opt-out" procedures followed by the union to give dissenting non-union members an opportunity to object to full agency fee assured protection of non-members' First Amendment rights).  This Court is unaware of any federal or state court which has interpreted <u>Knox</u> to hold that the "opt-out" procedures established in <u>Hudson</u> are unconstitutional, or that the "opt-in" procedures advocated by the Plaintiff are constitutionally required.  Further, neither party has cited any case that has reached such a holding to date.

In summary, the Court has not been presented with any facts or case law which supports an inference that SBAND's new procedural safeguards infringe on the Plaintiff's constitutional rights to free association and speech.  The Court holds, as a matter law, that SBAND's "opt-out" procedure is reasonable and constitutionally permissible under current United States Supreme Court precedent.  The Court grants summary judgment in favor of the Defendants on the second claim for relief.

IV.     **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  For the reasons set forth above, the Plaintiff's motion for summary judgment (Docket No. 43) is **DENIED** and the Defendant's cross-motion for summary judgment (Docket No. 48) is **GRANTED**.  Accordingly, all of the Plaintiff's remaining claims are dismissed with prejudice and judgment is entered in favor of the Defendants.

**IT IS SO ORDERED**

Dated this 28th day of January, 2016.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court